UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**
NOV 09 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-569-GWU

DON FUGATE,                            PLAINTIFF,

VS.           **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Fugate

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Fugate

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Fugate

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Don Fugate, filed an application for DIB on April 7, 2003 alleging disability commencing January 1, 1995 (Tr. 88-90) due to essential thrombocythemia,[1] blindness in one eye, kidney problems, and strokes (Tr. 102). After his application was denied initially and upon reconsideration, he requested and received a hearing before an Administrative Law Judge (ALJ), who eventually determined that Mr. Fugate had not proven the existence of a "severe" impairment prior to his Date Last Insured (DLI) of December 31, 1999. (Tr. 20-1). Accordingly, he was not eligible for benefits. (Tr. 21-2). The Appeals Council declined to review (Tr. 10-12), and this action followed.

---

[1] "Essential thrombocythemia" is a clinical syndrome characterized by repeated spontaneous hemorrhages, either external or into the tissues, and a remarkable increase in the number of circulating platelets. Dorland's Illustrated Medical Dictionary (27th Ed.) at p. 1717.

7

Fugate

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Fugate testified that he was 53 years old in 1999 at the time of the DLI, and held a master's degree in education. (Tr. 39-40). He had stopped teaching in 1985 because of headaches and stress, but ran a one-man trucking firm until 1997, when he had found he could not make any money, and it was becoming more difficult for him to do operations such as bookkeeping. (Tr. 40-1). Thereafter, he made an attempt to run a food market, and also did some work such as stocking shelves along with one or two employees, until approximately June, 1999. (Tr. 42-3). He was not positive if he had last worked in June or in December, 1999. (Tr. 60).

Mr. Fugate testified that he had suffered from migraine headaches since the 1980s, and they were gradually becoming worse until the problem finally came to a head early in 2003. (Tr. 44-5). At that point, he had a stroke, and, after treatment at the University of Kentucky Medical Center (UKMC) and St. Joseph's Hospital in Lexington, Kentucky, his condition was eventually diagnosed at the Mayo Clinic in Rochester, Minnesota, as being thrombocythemia in his blood. (Tr. 45-6, 320).

In describing his condition prior to the DLI, Mr. Fugate testified that his worst problem was migraine headaches, followed by back trouble. (Tr. 47). He recalled having a bad migraine headache every one or two weeks as early as 1982 or 1983,

8

but by 1999, they had become weekly or twice weekly. (Id.). Afterward, he would feel fatigued, and he would frequently vomit. (Tr. 48). To deal with the headache, he would lie in bed and not move. (Id.). Regarding his back pain, he recalled that his doctor had told him he was overweight and needed to reduce, but the pain was subsequently determined to be primarily the result of cysts on his kidneys. (Tr. 50). He recalled that he would have to be absent from the workplace at least half of the time, although it varied. (Tr. 51). He also felt that he had had some trouble standing due to "nerve damage" between his knee and hip before the DLI. (Tr. 56).

After reviewing the evidence, the ALJ determined that none of the plaintiff's conditions caused more than a minimal impact on Mr. Fugate's ability to perform basic work activities on or prior to December, 1999. (Tr. 20-1). Substantial evidence supports the ALJ's determination.

The bulk of the medical records in the administrative transcript concern the plaintiff's condition after February, 2003, when he was first admitted to the Appalachian Regional Hospital emergency room with possible seizure activity. (Tr. 143,148). After a transfer to UKMC, he was discharged on February 24th with a diagnosis of venous sinus thrombosis.[2] His history had been one of having headaches for many years but they had increased in severity and duration in the

---

[2]"Thrombosis" is the development or presence of an aggregation of blood factors, primarily platelets and fibrin with entrapment of cellular elements. Dorland's, supra, at p. 1718.

9

past "two or three weeks." (Tr. 163). An EEG also showed possible epileptiform activity, and Dilantin was prescribed. (Tr. 166). An x-ray of the lumbar spine was performed in order to investigate the plaintiff's complaints of back pain, and this had initially been interpreted as showing a questionable compression fracture, but orthopedics concluded that it was a "normal variant." (Tr. 164).

Shortly thereafter, on February 26th, the plaintiff was hospitalized at St. Joseph's Hospital, where a nephrology consultation was obtained for renal cysts. (Tr. 223).

At the end of March, 2003, Mr. Fugate was extensively evaluated by physicians at the Mayo Clinic, where his condition was summarized as an unusual cerebral thrombosis and adrenal hemorrhage. (Tr. 320). Several specialists at the clinic noted that the plaintiff reported that he was in excellent general health until February. (Tr. 320, 322, 327, 331). Dr. Ayalew Tefferi specifically recorded the plaintiff's history as: "He tells me that he has been in excellent health other than sporadic headaches . . . and that for two weeks prior to February 18 he was having severe headaches and . . . experienced severe back pain followed by a seizure." (Tr. 320). He denied any evidence of vasomotor disturbance other than his headaches. (Id.).

10

Likewise the plaintiff's hematologist in Lexington, Kentucky, Dr. Susan Liddle, indicated in April, 2003 that he had been "previously quite healthy when he developed a CVA [cardiovascular accident] in February." (Tr. 344).

The plaintiff's treating family physician both before and after 1999 was Dr. George R. Chaney. Dr. Chaney's office notes show infrequent treatment in the mid and late 1990s, largely for transient conditions. Mr. Fugate was seen in March, 1996 for a preoperative physical examination prior to a corneal transplant and cataract surgery, at which time the physician noted that he was "asymptomatic" except for visual loss in the left eye, which had been present since childhood. (Tr. 396-8). In August, 1996, he was seen for a rash on his lips, and with a request to lose weight in order to appear on a television program. (Tr. 395-6). Cold symptoms were reported in November, 1996 and March, 1997, a neck rash was treated in August, 1998, and Mr. Fugate reported low back pain for the past several months in October, 1998, noting that he had been doing a lot of walking as exercise. (Tr. 389-90). However, Dr. Chaney found a full range of motion, and only mild to moderate lumbar spasms. (Id.). He was seen on December 29, 1999 for sinusitis. (Tr. 388).

A state agency physician reviewed the record and concluded that the medical evidence prior to December 31, 1999 appeared to show only minor ailments, and nothing which would have prevented substantial gainful activity for a period of 12 months continuously. (Tr. 422).

11

Dr. Chaney subsequently gave a deposition in March, 2004, stating that he had seen Mr. Fugate beginning in April, 1993. (Tr. 424, 429). He testified that many people did not have signs or symptoms of thrombocytosis,[3] but it was possible for a person with the condition to have migraine headaches, aches, and pains. (Tr. 430-1). Looking back to his records, Dr. Chaney noted that he had given the plaintiff Maxalt and tried other drugs for migraine headaches, and he felt that this was evidence that Mr. Fugate was experiencing problems with "thrombocytosis" at the time, although the condition was not recognized until later. (Tr. 432). He testified that, within a reasonable medical probability, the condition existed before December 31, 1999, and would explain some of the aches, pains and headaches that he was having. (Tr. 435-6).

While Dr. Chaney's opinion as a treating physician is entitled to great weight, the fact that the plaintiff's condition may have existed prior to the DLI does not establish any specific functional limitations at the time. In addition, the Court notes that the prescription for Maxalt was listed as being given in November, 2001, almost two years after the DLI. (Tr. 374). There does not appear to be any other reference to migraines, or to medication given for migraine headaches, anywhere near the relevant period. The plaintiff's complaint of low back pain in 1998 appears to be an

---

[3]"Thrombocytosis" is an increased number of platelets in the peripheral blood. Dorland's, supra, at p. 1717.

12

Fugate

isolated incident. The opinion of even a treating physician is not entitled to controlling weight if it is not supported by adequate signs, symptoms, and laboratory findings. See, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Moreover, there is additional evidence in the statements the plaintiff made to specialists who treated him in 2003 regarding his generally good health until February of that year. Under the circumstances, the ALJ could reasonably have determined that the plaintiff failed to establish disability prior to December 31, 1999.

The decision will be affirmed.

This the ___9___ day of November, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13